## STRAIT v. RAY NORTH, INC.

1. PRINCIPAL AND AGENT —SALE OF AUTOMOBILE—INSURANCE.
   Automobile sales agency *held,* not an agent of the buyer of a car for purposes of procuring automobile insurance, where buyer refused to take delivery of car unless covered by insurance.

2. INSURANCE—AUTOMOBILE SALESMAN—AGENT FOR INSURER—RESTRICTIONS.
   An automobile seller may function as an agent of an insurance company for the purpose of obtaining insurance on the car at the buyer's expense *as long as the buyer is not coerced or influenced* into purchasing insurance from any insurance agent or broker designated by the seller and such seller does not receive a part of the premium (PA 1950 [Ex Sess], No 27, §§ 16, 31).

3. SAME—AUTOMOBILE SALESMAN—APPARENT AUTHORITY—MISREPRESENTATION.
   Automobile salesman *held,* clothed with apparent authority to obtain insurance upon car sold to buyer, under working arrangements disclosed in record presented, where it is apparent that the buyer, himself an adult, clearly represented he was acting on behalf of a friend who was a minor, and amount of premium paid was such as to cover a person of the car user's age and misrepresentations to the insurer may not be charged to the buyer.

Appeal from Oakland; Hartrick (George B.), J. Submitted June 9, 1955. (Docket No. 40, Calendar No. 46,513.) Decided October 3, 1955.

REFERENCES FOR POINTS IN HEADNOTES
[1] 47 Am Jur, Sales § 880.
[2] 29 Am Jur, Insurance § 85 *et seq.,* § 125.
[3] 2 Am Jur, Agency § 101 *et seq.*

Bill by Martin T. Strait against Ray North, Inc., a Michigan corporation, Wabeek State Bank, a Michigan banking corporation, Secured Casualty Insurance Corporation, later and more properly referred to as Secured Casualty Insurance Company, a foreign corporation, Edward Pfalz, doing business as Pfalz and McGraw, and Henry Fearl for specific performance of a contract of insurance. Cross bills against insurance company and insurance agency by 3 defendants withdrawn when case dismissed as to them. Decree for plaintiff against insurance company and agency. Defendants Secured Casualty Insurance Company and Pfalz and McGraw, general agents, appeal. Affirmed.

*Renne, Smith & Merideth (Gordon S. Smith,* of counsel), for plaintiff.

*Lacey, Jones & Doelle (Ivin E. Kerr,* of counsel), for defendants Secured Casualty Insurance Company and Pfalz and McGraw.

KELLY, J.    This is an appeal by defendants Secured Casualty Insurance Company, originally designated as Secured Casualty Insurance Corporation, and Edward Pfalz, doing business as Pfalz and McGraw, from a decree of specific performance holding valid and binding an undelivered policy of insurance for the protection of the plaintiff, Marvin T. Strait, and ordering Secured Casualty Insurance Company to perform each and every provision of said policy.

On May 15, 1952, Bobby F. Easley, 18 years of age, was informed by Mr. Perkey, salesman for Ray North, Inc., that his company could not sell Easley a new Ford car and arrange to finance same because Easley was not 21 years of age. Easley brought his friend Marvin Strait, 30 years of age,

to the Ford agency, at Perkey's suggestion that he get someone over 21 to take title to the car. Strait informed Perkey that he owned a car and was not, therefore, interested in another and that if he took title the real owner and operator of the car would be Easley; that he was assured by Easley that he would keep up the payments, but that he (Strait) did not want to have anything to do with the transaction unless he was sure that the car was fully covered by insurance. Perkey informed Strait that he could and would take care of the insurance, and computed from a book in his possession the insurance charge. Easley paid $713.97 in cash, leaving a balance of $1,650. To this amount was added $182.-24 finance charges and $172.00 for fire and theft, deductible collision, public liability and property damage insurance. Perkey took a statement from Strait in regard to his income, employer, property possessed, references, et cetera, and it is conceded that all questions asked were answered fully and truthfully by Strait. In fact, there is no claim that Strait ever directly or indirectly endeavored to deceive any of the defendants.

Ray North, Inc., was furnished with chattel mortgage forms containing both the names of Wabeek State Bank and Motor Car Contract. Harry Fearl had also supplied North with a rate book so that the corporation could determine the premium, and include that amount in the total covered by the chattel mortgage. Under this arrangement the purchaser did not make a written application for insurance, and none was made in this case.

Perkey prepared a chattel mortgage providing for 24 monthly payments at $83.51 each and plaintiff Strait signed it. On May 16, 1952, this chattel mortgage was assigned to Motor Car Contract, which company was owned by defendant Harry Fearl.

The paper passed through the clearing house drawn with a draft upon Motor Car Contract. The bank received the paper on May 23, 1952. Fearl went to the bank on that date, and Fearl testified that was the first notice he had that there was a Marvin Strait deal. In completing this transaction, as he had numerous other transactions of a similar nature, Fearl testified:

"This paper comes in through the clearing house drawn on my company the Motor Car Contract.

"*Q.* And before anything further takes place you issue your check to the Wabeek State Bank for the draft, isn't that true?

"*A.* The transaction is completed that day in the bank whereby the bank writes up that slip tabulating all the mortgages and they give me a complete tape of all the mortgages and I sign the mortgages and give them a check.

"I issue a check to pay the amount. The full amount to go on the draft. At that point I own these papers.

"*Q.* And thereupon you assign them over to the bank and then what happens, does the bank then credit your account with the amount that they pay you to purchase these papers?

"*A.* To be technical they could credit it before and they have made out the bank deposit slips and all this procedure is done before I am ever in there to sign it. They complete the operation and I am in there to finish it."

Fearl was an agent for and represented the defendant Secured Casualty Insurance Corporation. He was also a duly authorized and licensed finance company doing business as Motor Car Contract. The insurance company relied upon the information Fearl sent to them in issuing policies.

Appellant Secured Casualty Insurance Corporation is a foreign corporation with its main office in Indianapolis, with a branch office in Detroit. This

Detroit branch was operated by the general agents Pfalz and McGraw, who represented the company through agents rather than dealing directly with the public.

Fearl had a working arrangement with the Wabeek State Bank and numerous automobile dealers, and such working arrangement was known to Pfalz and McGraw. Fearl testified:

"I explained my method of operation to the representative of Pfalz and McGraw. I took Ed Pfalz over to the Wabeek Bank and introduced him to Mr. Slyvain (in charge of the department financing automobiles). He was aware of the whole deal."

Fearl also testified:

"When I took Mr. Pfalz over to the Wabeek Bank and had him go over with me and Mr. Slyvain the method by which I got these applications, he didn't disapprove of it. He was aware of the fact that this information was what I used to pass on to him for the application."

This working arrangement between Fearl, the Wabeek Bank, and the dealers, not only provided that Fearl would write the insurance on cars that were financed, but that cars would be insured from the moment the dealer placed the customer in possession. Under this arrangement Fearl not only obtained commission on the insurance premium, but also a discount commission on the transaction between the dealer and the bank.

That this so-called general working arrangement between Fearl, the Wabeek Bank, and the dealers, applied to Ray North, Inc., is evidenced by the following testimony of Fearl:

"*Q.* You have no agreement with Ray North?

"*A.* I have a working agreement with the Wabeek Bank and their contact man makes the deal with Ray North.

"*Q.* I asked you if you had any agreement.

"*A.* I have talked with Ray North.

"*Q.* In regard to the type of transactions?

"*A.* Let's say yes but I went to Ray North with the bank representative.

"*Q.* And you worked out this system of dealings?

"*A.* We very likely completed the deal to handle all of those transactions."

Fearl testified that when checking over the papers he noticed that while Strait was 30 years of age the premium charged was at an increased rate as provided for in class 2 insurance. Class 2 liability provides for drivers under the age of 25. Fearl testified that he tried to reconcile this so-called discrepancy on 4 different days between May 23d and May 29th, but could not do so because each time he contacted the bank Mr. Slyvain was out and had the file with him. He did not try to obtain the information to eliminate what Fearl designates as a discrepancy from Ray North, Inc., or from Strait. In this regard he testified:

"When I send (Pfalz and McGraw) in an order, I 'phone in all the information pertinent. The company relies on the information I sent to them to base the issuance on. It is my job to collect this information and find out about it to send on to the company. I have worked up a course of procedure where the bank does the checking of the information I want. Over a course of time that is the way I have gotten that information. Many times I attempted to get the information directly from either the car dealer or the individual himself.

"*Q.* But in this case you made no such attempt?

"*A.* There are always exceptions."

According to his custom, Fearl telephoned the information to Pfalz and McGraw so they could issue the insurance policy. There is nothing in the record to show that Fearl called the discrepancy

to the attention of Pfalz and McGraw between the day he gave them the information and the day Strait and Easley came to his office and reported the Kentucky accident.

In this regard we note that while appellants in their briefs contend that the insurance policy was never prepared or executed by Pfalz and McGraw, their answer to the bill of complaint establishes the following admissions:

(1) That the salesman of Ray North, Inc., inquired of Strait and Easley if insurance was desired on the automobile;

(2) That an order for public liability and property damage insurance was placed with Harry Fearl and an order for same telephoned by Fearl for issuance through Pfalz and McGraw and Secured Casualty Insurance Corporation;

(3) That following said order for insurance a policy was prepared in accordance with the order placed by Fearl, and appellants were preparing to deliver same to Strait when the true facts concerning the purchase and ownership were made known to the company;

(4) That thereafter the company cancelled said order and policy of insurance and notified plaintiff by registered mail.

A conclusion can reasonably be arrived at that between May 23d, when Fearl obtained the information regarding Strait from the bank, and June 3d, when the company claims it first became aware that Strait was not the sole owner, that Fearl did not notify the underwriters of any discrepancies that should hold up the preparation and issuance of the insurance policy.

Easley took delivery of the car on May 17th, and there is no dispute that at that time both plaintiff Strait and Easley were assured by Ray North, Inc., that the car was insured.

Twelve days later, on May 29th, Easley was involved in an accident in the State of Kentucky. The car was damaged to the extent it could not be driven back to Detroit. Easley returned to Detroit and contacted Ray North in regard to the insurance. North referred him to Fearl. Plaintiff Strait went to Fearl's office with Easley and Strait informed Fearl honestly and completely how he had become involved in the transaction. Fearl sent them over to be interviewed by an investigator of Pfalz and McGraw, where again the incidents leading up to the signing of the chattel mortgage were completely related by Strait.

Subsequently Strait received a call from the Wabeek Bank to pay off the note within 15 days. He also received a letter from Pfalz and McGraw, dated July 24, 1952, informing him there was no insurance coverage on the car.

Douglas and Mildred Hamilton, who were injured in the Kentucky accident, sued Strait and Easley in the Federal court. Strait notified appellant Secured Casualty Insurance Corporation and was informed that the corporation was not interested in defending the suit. Judgment was obtained against Strait and Easley for $30,000.

Plaintiff called as witnesses in the present case Bobby Easley, Marvin Strait, and the defendant Harry Fearl under the statute.* Defendants did not call any witnesses.

Defendant Wabeek State Bank filed its cross bill against Harry Fearl and Secured Casualty Insurance Corporation, praying that the insurance corporation, or its Detroit representative, Pfalz and McGraw, be required to deliver said policy. At the conclusion of proofs the court granted the defendant bank's motion to dismiss because said bank was not

---

* See CL 1948, § 617.66 (Stat Ann § 27.420).—REPORTER.

involved as an agent or an applicant for insurance, and, therefore, not subject to plaintiff's prayer for specific performance.

Defendant Ray North, Inc., filed its cross bill against Fearl and Secured Casualty Insurance Company and Pfalz and McGraw, alleging that Fearl had full power and authority to accept proposals of insurance for the Secured Casualty Insurance Corporation; that Ray North, Inc., assigned the chattel mortgage to Fearl; that the insurance premium was computed in accordance with the rate structures furnished to Ray North, Inc., by Harry Fearl; that no signed application was made by Strait to Fearl, and that the insurance premium was paid to Fearl by the Wabeek State Bank. This cross bill concluded with the prayer that the court require defendants to deliver the policy of insurance to Strait. At the conclusion of proofs the court granted North's motion to dismiss, but without prejudice against Strait.

Defendant Fearl also moved to dismiss, and his motion was granted, the court holding that Fearl was an agent, not an insurance company and, therefore, not subject to plaintiff's prayer for specific performance of the contract of insurance.

Appellants divide their argument for reversal and vacating of decree and dismissal of the bill of complaint into 3 parts:

(1) *Appellants contend Secured Casualty Insurance Corporation had no knowledge prior to May 29, 1952 (date of Kentucky accident), of the purchase, ownership and operation of the vehicle by Bobby Easley and that Ray North, Inc., was the agent of the buyer.*

There is nothing in the record to show that the insurance company had knowledge of the ownership of Bobby Easley prior to the date of the accident, May 29, 1952. The trial court found that a principal-

agent relationship existed between Ray North, Inc., and Secured Casualty Insurance Corporation. We cannot agree with appellants' contention that Ray North was the agent of the buyer.

Appellants admit that the question of insurance was first mentioned by North's salesman Perkey, who told Strait he could arrange for the insurance. A conclusion can be drawn that Perkey was desirous of closing the deal and in order to do so arrangements had to be made for financing and insurance. It is apparent that in this, and other similar deals, the purchaser would, unless he had a close friend in the insurance business, take advantage of the opportunity offered by Perkey to arrange for the insurance and include the premium in the unpaid balance secured by the note and chattel mortgage.

Ray North, Inc., was the agent of the defendant insurance company. This company, through its general agents Pfalz and McGraw, was fully advised of the working arrangement between its agent Fearl, the defendant bank, and the automobile dealers. Fearl admits that with a representative of the bank this working arrangement was discussed and agreed to by the bank, Fearl and Ray North, Inc.

Perkey was acting as an agent for the bank and for the insurance company as he filled in the forms that had been presented to him, and obtained for the bank and for the insurance company the answers to questions upon which the decision would be made whether Strait would be an acceptable risk both for finance and insurance purposes.

Defendant refers to PA 1950 (Ex Sess), No 27, §§ 16 and 31.* Section 16 provides that when the seller of an automobile contracts to purchase insurance at buyer's expense on a motor vehicle sold

---

* CLS 1954, §§ 492.116, 492.131 (Stat Ann 1953 Cum Supp §§ 23.628[16], 23.628[31]).

under instalment sale contract, such insurance shall be purchased from a duly authorized and licensed broker or agent and the cost of the premium shall not exceed the rates established in the current manual of a standard insurance rating bureau. Another provision of this section provides that no instalment seller shall coerce, threaten, or influence the instalment buyer to purchase insurance from any insurance agent or broker designated by such seller. There is nothing in this section that prevented salesman Perkey from acting as he did as an agent of the defendant insurance company and contracting to purchase at the buyer's expense the insurance on the car he sold.

Section 31 of the act prohibits any part of the premium being paid by the agent or broker to the seller, or any seller from receiving any part of the premium from the agent or broker.

Defendants argue that because the law provides Ray North, Inc., could not act as an insurance agent or insurance company or broker, or derive any pecuniary profit from the transaction, it is clearly established that Ray North, Inc., acted as an agent for Strait and Easley. We cannot agree with this conclusion. The record proves that the defendant insurance company, through its agent Fearl, entered into a working agreement with Ray North, Inc., whereby Ray North, Inc., was to perform certain acts for defendant insurance company preliminary to the company's issuance of insurance policies.

(2) *Appellants contend there was misrepresentation to Secured Casualty Insurance Corporation as to the purchase, ownership and operation of the vehicle by Bobby Easley.*

The question naturally arises: Who made the claimed misrepresentations to the insurance company? Certainly it was not plaintiff Strait. No record could more clearly show a plaintiff who did

not want to misrepresent any fact about the transaction from the time he talked to salesman Perkey through the conferences he had with Fearl and the representatives of the insurance company subsequent to the accident. If there was misrepresentation, it was the misrepresentation by the insurance company's agent Ray North, Inc. This record leads to but one conclusion, namely, that as Strait followed salesman Perkey's suggestion and advice Strait thought he was performing a legal act and one which would provide without question a valid binding insurance coverage. Whether salesman Perkey thought he could properly arrange the deal as he did, or whether his anxiety to close the sale caused him to knowingly violate the company's instructions, is not in issue in this case. As agent he was clothed with apparent authority and any misrepresentations he made cannot be charged to plaintiff.

Appellants cite Michigan cases, and cases from other States, dealing with the question of hidden ownership. These cases deal with the principle that the applicant must make a full disclosure as to the ownership of a vehicle in applying for insurance and cannot profit by applicant's deception. The cited decisions set forth a principle with which this Court is in complete accord. In the instant case, however, there was a full disclosure by plaintiff Strait to defendant insurance company's agent Ray North, Inc., and plaintiff Strait practiced no deception upon the insurance company.

(3) *Appellants contend there was no valid binding contract of insurance with Secured Casualty Insurance Corporation subject to specific performance.*

Under the working arrangement Ray North, Inc., was authorized by appellants' agent Fearl to place a binder upon the car at the time of delivery to purchaser, as were 100 other dealers with whom Fearl had similar working arrangements. After calling

the bank and determining that the contemplated deal was acceptable, North prepared the chattel mortgage for Strait's signature and exercised the authority granted by placing a binder upon the car, and notified Strait and Easley that the car was insured. Two days after Strait signed the chattel mortgage Perkey again stated that the car was insured as he delivered the car to Easley. Testifying as to the binder arrangements, Fearl stated:

"I did not prepare the policies. I do not know when the policy in this case was prepared. I never saw the public liability policy. It wasn't sent to me for delivery. It was not unusual for me to receive the application after the car had been delivered.

"*Q.* Do you know what the custom was of Pfalz and McGraw in your agency in dating the effective date of the insurance?

"*A.* It would be dated as of the date of the policy.

"*Q.* That is the contract made as of the date of the sale of the car.

"*A.* Yes. * * *

"*The Court:* When would you consider a binder took place, when would you consider the effective date of insurance?

"*A.* If this had gone through the regular way we would have made the policy as of the date of the delivery of the car.

"*The Court:* In the ordinary course of events you would say there would be a binder from the date that the car was delivered. If I called you up today and said I bought a new car and gave you a description, you would say you are insured from this moment on.

"*A.* Right."

The premium was paid to Fearl, and this premium was never returned or offered to be returned. The binder was never repudiated or recalled. Appellants took no steps to protect Strait against eventualities such as did arise. There can be little doubt if ap-

pellants, through their agent Fearl, had only taken the time to telephone Strait's number, given to Perkey in his statement, and told Strait they could not and would not issue the policy, this case would not be in this Court. The record is clear that Strait would not have allowed his name to have been connected with the transaction if the automobile had not been fully insured.

Appellants, on this point, state:

"While it probably can be concluded that the deception was practiced by Perkey one must not overlook the fact that the record clearly shows that Strait was present when Perkey telephoned the Wabeek Bank regarding financing and insurance and specifically remembers that no mention in that conversation was made of Easley. * * * In any event even if one would consider Strait innocent in the representations made by Perkey to these defendants nevertheless Strait must bear the consequences of the acts of his agent Perkey."

We have disposed of this contention previously in this opinion—Perkey was not the agent of Strait —Perkey was the agent of defendant insurance company.

Affirmed. Costs to appellee.

CARR, C. J., and BUTZEL, SMITH, SHARPE, BOYLES, REID, and DETHMERS, JJ., concurred.